RITA L. SHAW, Appellant v. BRUCE B. CAMERON III, Appellee

No. COA95-341

(Filed 4 March 1997)

**Discovery and Depositions § 8 (NCI4th); Divorce and Separation § 400 (NCI4th)— child support—discovery requests—improper limitation by court**

The trial court in a child support action erred by ordering that defendant father respond to discovery requests only as to property owned individually by the defendant and subject to his exclusive control and by limiting defendant's responses regarding his inheritance or trust interests to those items subject to his ownership and control since the value and nature of defendant's interest in any partnerships or corporations and the terms of any trust of which he may be the beneficiary, as well as the amount of

income, including nontaxable, deferred or declined income flowing therefrom, would be relevant in this proceeding; any judgment rendered against defendant setting an amount of child support would be dependent in significant part upon the amount of his income and the nature of his estate whether owned or controlled exclusively by defendant or jointly with others; and the terms of business associations or trusts in which defendant possesses an interest might lead to admissible evidence regarding defendant's financial circumstances and resultant ability to pay child support even if his father currently controls the trust.

**Am Jur 2d, Depositions and Discovery § 40; Divorce and Separation § 1041.**

**Spouse's right to discovery of closely held corporation records during divorce proceeding. 38 ALR4th 145.**

**Protective orders limiting dissemination of financial information obtained by deposition or discovery in state civil actions. 43 ALR4th 121.**

Appeal by plaintiff from order entered 11 July 1994 and judgment entered 24 October 1994 by Judge J.H. Corpening, II, in New Hanover County District Court. Heard in the Court of Appeals 13 May 1996.

*John K. Burns for plaintiff-appellant.*

*Stevens, McGhee, Morgan, Lennon & O'Quinn, by Robert A. O'Quinn, for defendant-appellee.*

JOHN, Judge.

Plaintiff assigns error to the trial court's 11 July 1994 order restricting discovery and to the court's 24 October 1994 judgment limiting child support paid by defendant to that amount computed utilizing the North Carolina Child Support Guidelines (the Guidelines). We hold the trial court erred in its 11 July 1994 discovery order.

Pertinent factual and procedural background is as follows: plaintiff and defendant lived together at defendant's home in Wilmington from October 1992 until late January or early February 1993; however, they never married. The parties' son, Riley Jackson Cameron (Riley), was born 11 September 1993.

Plaintiff instituted suit for child support 6 October 1993 and defendant answered, denying paternity. Plaintiff's subsequent motion

to amend her complaint to include a claim for custody was granted by the trial court. In December 1993, following receipt of blood-grouping test results establishing defendant's paternity of Riley, the parties entered into a consent agreement requiring defendant to pay child support in the amount of $600 per month pending a support award by the court.

Plaintiff submitted a "First Set of Interrogatories to Defendant" and "First Request to Defendant for Production of Documents," and received responses containing objections to much of the information sought. Plaintiff thereupon filed a motion to compel 8 June 1994. Defendant countered by seeking a protective order regarding certain financial matters and filing a stipulation that he would "not raise 'inability to pay reasonable child support' as a defense." In an order filed 11 July 1994, the trial court allowed plaintiff's motion to compel in part, but strictly limited the scope of discoverable information.

At trial in October 1994, evidence was introduced tending to show plaintiff was thirty-seven years-old, had obtained her GED and worked in the past as a nightclub dancer, but that she had not been employed for several years prior to trial. She lived in a mobile home in Davie County with one year-old Riley and three year-old Robbie, her son from a previous relationship. Plaintiff received income in the form of AFDC, food stamps, HUD rent subsidies, and occasional child support from Robbie's father.

The evidence also tended to show that defendant, thirty-eight years old at the time of trial, had obtained a tenth-grade education. He had not been employed since at least 1988, save for part-time work as a musician in a band for which he received approximately $500 annually. All defendant's living expenses were paid from proceeds of the Bruce B. Cameron, III, trust (the trust) established for defendant's benefit by his father. Defendant received an allowance of $300 per week from the trust, but sometime prior to October 1994 had received $650 per week. The 1994 proceeds of the trust, including interest and stock dividends totalling $29,294.54 through September 1994 and "non-recurring distributions from limited partnerships" in the amount of $38,251.72, were projected to total $67,546.

Testimony by the accountant employed by defendant's father indicated she was responsible for management of the trust records. All defendant's bills were directed to her for payment at the office of defendant's father, including defendant's monthly medical insurance premiums in the amount of $436.71, child support of $600.00 per

month for defendant's son by his first marriage, and $65.00 per week in preschool expenses for defendant's daughter living in the Wilmington home. The accountant testified defendant was possessed of no authority to direct payment of monies from the trust account nor to render decisions concerning assets of the trust. Moreover, the amount of defendant's allowance from the trust was determined by defendant's father and defendant had no control over that decision.

Further testimony showed defendant owned a five bedroom home which his father had purchased for him while retaining a promissory note in the amount of $150,006.50 executed by defendant. Although the note specified 3 September 1995 as the date upon which it was due and payable, defendant stated that he "[didn't] think there [was] a specific date on it." A full-time housekeeper employed by defendant discharged duties including cooking, cleaning, and helping care for defendant's three year-old daughter by his second wife, from whom he was separated. The housekeeper, who earned $15,472 between January and September 1994, was paid from the trust.

The court entered judgment 24 October 1994 granting plaintiff primary custody, but denying plaintiff's request for an upward deviation from the Guidelines and defendant's request for a deviation reducing the Guideline amount. Plaintiff consequently was awarded child support in the amount of $644 per month, which amount was calculated using defendant's 1994 projected trust income as his gross income. Plaintiff was also granted $1,500 in counsel fees. She filed notice of appeal 9 November 1994.

---

Plaintiff first contends the trial court erred in its 11 July 1994 order addressing her motion to compel discovery. Specifically, plaintiff challenges those portions of the court's order directing that defendant respond to discovery requests "only as to property owned individually by the Defendant and subject to his exclusive control" and limiting defendant's responses regarding his inheritance or trust interests to those items "subject to his exclusive ownership and control."

To cite one example, plaintiff served the following interrogatory on defendant:

Do you have, or have you had in the last 18 months, an ownership or beneficial interest in any entity, including but not limited to partnerships, limited partnerships, corporations, associations, joint ventures, trusts and sole proprietorships? If so, describe

each such entity with particularity, including but not limited to its name; its address; your legal or equitable relationship to or interest in the entity; the fair market value of your interest in the entity; and your 1993 income from the entity.

In consequence of the court's restrictions, defendant's answer to this interrogatory and others similar in nature was "none," notwithstanding data on his 1993 tax returns reflecting an interest in at least two partnerships, Cameron Co. Ltd. Partnership and Cameron Properties, and one closely held corporation, Bayshore Estates. The sole information concerning defendant's assets and income obtainable by plaintiff within the limitations set by the court was that contained in defendant's 1992 and 1993 income tax returns.

As a result of the court's order, plaintiff asserts, she was

denied any reasonable opportunity to gather evidence as to the defendant's non-taxable income, as to the nature and value of the defendant's interest in the partnerships, as to the identity and value of the defendant's interest in real estate that he did not solely own, as to the terms of the trust generating the $67,546 income in 1994, and as to the nature and extent of tax-sheltered investments not solely owned and controlled by the defendant.

Generally, "orders regarding matters of discovery are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of discretion." *Hudson v. Hudson*, 34 N.C. App. 144, 145, 237 S.E.2d 479, 480, *disc. review denied*, 293 N.C. 589, 239 S.E.2d 264 (1977). However, under the circumstances *sub judice*, we are compelled to conclude the trial court's 11 July 1994 order constituted an abuse of discretion.

N.C.R. Civ. P. 26(b)(1) allows discovery of "any matter . . . which is relevant to the subject matter involved in the pending action." N.C.G.S. § 1A-1, Rule 26 (1990). The rule additionally provides:

It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought.

The "ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the *ability* of the father [mother] to meet the needs." *Pittman v. Pittman*, 114 N.C. App. 808, 810, 443 S.E.2d 96, 97 (1994) (emphasis

added). Indeed, the statute governing child support actions provides that:

> Payments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the *estates*, earnings, conditions, [and] accustomed standard of living of the child and the parties . . . .

N.C.G.S. § 50-13.4(c) (1995) (emphasis added). Further,

> a [parent's] duty of support today does not end with the furnishing of mere necessities if he is able to afford more. In addition to the actual needs of the child, a [parent] has a legal duty to give his children those advantages which are reasonable considering his financial condition and his position in society.

*Williams v. Williams*, 261 N.C. 48, 57, 134 S.E.2d 227, 234 (1964).

Prospective child support is currently determined in most cases under the Guidelines, *Taylor v. Taylor*, 118 N.C. App. 356, 362, 455 S.E.2d 442, 446 (1995), *rev'd on other grounds*, 343 N.C. 50, 468 S.E.2d 33 (1996), and, absent a request for variance,

> support set consistent with the guidelines is conclusively presumed to be in such amount as to meet the reasonable needs of the child for health, education, and maintenance.

*Browne v. Browne*, 101 N.C. App. 617, 624, 400 S.E.2d 736, 740 (1991). The Guidelines utilize the "gross income" of each parent in calculating the amount of a child support obligor's payments thereunder. *North Carolina Child Support Guidelines*, AOC-A-162 (8/91 and 10/94 revisions). Gross income under the Guidelines is defined as "income from any source," including "income from . . . dividends, . . . interest, trust income, . . . [and] gifts." *Id.* Further, in a separate provision, the Guidelines specifically discuss inclusion of income from the "joint ownership of a partnership or closely held corporation." *Id.* Finally, "non-recurring, one-time payments" are "includable as income," however they "should be distinguished from ongoing income." *Id.*; *see, e.g., Helbling v. Helbling*, 541 N.W.2d 443, 447 (N.D. 1995) (regarding non-recurring payments: "Our law and the public policy inherent in the guidelines dictate that children should share in the child support obligor's good fortune.").

In view of the foregoing principles, the value and nature of defendant's interest in any partnerships or corporations and the

SHAW v. CAMERON

[125 N.C. App. 522 (1997)]

terms of any trust of which he might be the beneficiary, as well as the amount of income, including non-taxable, deferred or declined income, flowing therefrom, would all bear relevance to the instant proceeding. Any judgment rendered against defendant setting an amount of child support would be dependent in significant part upon the amount of his income and the nature of his *estate*—whether exclusively owned or controlled by defendant, or jointly with others.

The terms of business associations and trusts in which defendant might possess an interest also would appear to be discoverable, if only under the rubric of being "reasonably calculated to lead to the discovery of admissible evidence" regarding defendant's financial circumstance and resultant ability to pay child support. *See* N.C.R. Civ. P. 26(b)(1). While testimony was introduced that defendant's father exercised sole control over the trust, this was not necessarily conclusive and, without access to the trust instrument, plaintiff lacked any means to challenge the testimony through cross-examination or otherwise. Moreover, current control by defendant's father of the trust would not necessarily preclude relevancy of the terms thereof to the instant case. Examination of the trust instrument, for example, could reveal any present or future authority of defendant to liquidate trust assets, as well as indicate the point at which he might be entitled to access the principal.

We note that in response to plaintiff's motion to compel discovery, defendant filed a stipulation that he would not raise inability to pay as a defense, implying such stipulation should operate to relieve him from full disclosure of his financial condition. However, under the Guidelines, a full examination of all financial resources is necessary for the trial court to determine the presumptive award. Indeed, when the parties' annual combined income exceeds the upper limit covered by the Guidelines (presently $150,000), in order

to determine the relative abilities of the parties to provide support, the court "must hear evidence and make findings of fact on the parents' income[s], estates (e.g. savings; real estate holdings, including fair market value and equity; stocks; and bonds) and present reasonable expenses."

*Taylor*, 118 N.C. App. at 362-63, 455 S.E.2d at 447 (citation omitted).

Based on the foregoing, we reverse the trial court's 11 July 1994 order on plaintiff's motion to compel and remand for reconsideration

and entry of a new order in light of our decision herein. *See Powers v. Parisher*, 104 N.C. App. 400, 411, 409 S.E.2d 725, 731 (1991), *appeal dismissed and disc. review denied*, 331 N.C. 286, 417 S.E.2d 254 (1992). Should the court deem it appropriate in its discretion, it may direct the requested information to be produced under seal for *in camera* determination by the court of relevancy or potential for leading to discovery of admissible evidence. Any material which the court determines not discoverable might then be preserved under seal for review on appeal should further consideration by this Court become necessary.

In that the trial court may alter its ruling on plaintiff's motion to compel in light of our opinion herein, which modified order might in turn affect the court's subsequent decisions on deviation from the guidelines and calculation of the amount of child support to be paid by defendant, we also vacate that portion of the court's October 1994 judgment setting an amount of child support and declining to deviate from the Guidelines. We observe that the parties' consent order for temporary child support "pending further orders of [the trial] court" would thereby be reinstated.

While additional evidence beyond that previously considered may not ultimately be produced, because of the criticality of income amounts to a child support award, full opportunity for discovery of defendant's estate should be allowed in the interest of the child's welfare. However, in that the amount of child support remains to be resolved pending resolution of plaintiff's motion to compel, we decline to address plaintiff's further contention that the trial court erred by failing to grant an upward deviation from the Guidelines.

Finally, we vacate the trial court's award of counsel fees subject to subsequent entry of an award upon proper findings at the conclusion of further proceedings. As the errors assigned by plaintiff to the court's setting of the award at but one-half the fees she incurred will likely not recur on remand, we likewise do not discuss those contentions.

Reversed and remanded.

Chief Judge ARNOLD and Judge McGEE concur.